The plaintiffs in this suit, Selman & Son, were merchants in Baltimore, and the defendant, Dun, resident in Essex Co., Va. In the course of trade, the defendant gave to the plaintiffs his note for the sum of $699.47, payable at the Farmers' Bank of Virginia, at Richmond, on the 1st day of May, 1850. Before the note became due the defendant, Dun, went to Baltimore and requested the plaintiffs, who had sent the note to Richmond for collection, to withdraw it and hold it at Baltimore, as he did not know whether he would be able to take it all up at the time it fell due. The plaintiffs accordingly withdrew the note from the bank at Richmond and held it in Baltimore. On the 22d of April, 1850, the plaintiffs wrote to the defendant that they had withdrawn his note as requested, that they had it in Baltimore and requesting him to remit the money to take it up. On the 20th of May, they again wrote to him, requesting him to attend to the matter. On the 27th of May, Dun replied that he had received but one (the last) letter, that he called at the bank in Richmond on the 3d of May and found no such note there, and requesting to know where the note was, and at what point payment was expected. In reply, the plaintiffs wrote that they held the note in Baltimore, adding, "If you will forward us the amount, we will send you the note." On the 24th of June, the defendant inquired by letter, of the plaintiffs, why they had not returned him the note, as he had forwarded the money according to request, and urging them to do so. The facts agreed by the counsel for both plaintiffs and defendant were: "That about the 7th of June, the sum of $700 was enclosed in a letter to the plaintiffs, and sent to Baltimore by mail to their address. That the usage and custom for persons in Essex county, purchasers and others, dealing with merchants in Baltimore and other Northern merchants was general, when they sent money to make payments, to send it by mail to such Northern merchants, and was known generally to such merchants in Baltimore and other places. That the $700 was sent after the receipt of Selman's letter of 30th May, directing the defendant to forward the amount, and, as Dun supposed, in pursuance and for the purpose of complying with that letter. That Dun borrowed the money for the purpose of bringing it down to Richmond to take up the note due the plaintiffs, and did bring it to Richmond for that purpose. That Essex county, where Dun resides, is about 43 miles from Richmond, 56 miles from Fredericksburg, and farther still from Norfolk, and these are the nearest points at which bank-drafts could be obtained, and that this was known to the plaintiffs." It was proved by the plaintiffs, that they never took the risk of remittances by mail from their customers upon themselves, that they never received the money or the letter containing it, that immediately upon the receipt of Dun's letter informing them that he had sent the money by mail, they made diligent investigation and search, but that neither they nor the officers of the post-office department could get any clue to it, and that upon the receipt of Dun's letter, they immediately sent a messenger to him demanding the payment of the note.

Griswold & Claiborne, for plaintiffs.

Patton & Patton, for defendant.

---

SELMA, MARION & M. R. CO. (BLACKBURN v.). See Case No. 1,467.

---

## Case No. 12,649.

### The SELT.

[3 Biss. 344;[1] 17 Int. Rev. Rec. 22; 5 Chi. Leg. News, 109.]

District Court, E. D. Wisconsin. Oct. Term, 1872.

MARITIME LIENS—REPAIRS—HOME PORT — WHO MAY APPEAR AS CLAIMANT—ADMIRALTY RULES.

1. Under the twelfth rule in admiralty, as amended by the supreme court at the December term, 1871, a libel can be maintained for repairs and supplies furnished to a domestic vessel at the home port.

[Cited in Whittaker v. The J. A. Travis, Case No. 17,599.]

2. Obiter, the lien would only attach at the date of seizure.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

3. In the absence of the owner, a mortgagee may be permitted to appear as claimant.

4. The alteration of rule 12 was intended to place contracts for repairs and supplies for all vessels on an equality as to proceeding in admiralty, not to abrogate the distinction between a domestic contract and a maritime lien. The alteration applies to the character of the process to be used, not tc the question of jurisdiction.

[Cited in Whittaker v. The J. A. Travis, Case No. 17,599.]

5. The rules established by the supreme court are rules of practice, not of decision.

[Cited in The H. E. Willard, 53 Fed. 600.]

In admiralty.

This was a libel by William H. Wolf and Thomas Davidson, ship-builders and proprietors of dry docks in the city of Milwaukee, to recover for repairs and supplies furnished during the year 1872 to the scow Selt, a vessel owned in said city. The owner of the vessel not appearing, Osuld Torrison, a mortgagee, was allowed by the court to appear as a claimant, and answer the libel. The answer alleged that the libellants had no maritime lien upon the vessel, and no lawful right to bring or maintain their libel, the said vessel being owned at the port of Milwaukee by a resident of said city, and that the repairs and materials were performed and furnished in said city, at the instance and request of the owner of the vessel. The respondent further alleged and propounded that one Patrick Hoye, by a mortgage dated December 23, 1869, conveyed said vessel to him to secure a portion of the purchase price of the vessel, and that the mortgage was recorded in the office of the collector of customs, in the city of Milwaukee, on the 24th of the same month, under which mortgage he claimed title to said vessel paramount to the claim of the libellants. The facts pleaded were not disputed.

H. H. Markham, for libellants.
Emmons & Hamilton, for respondent.

MILLER, District Judge. A maritime lien was considered the foundation of proceedings in rem when admiralty and maritime jurisdiction was conferred upon the federal courts. Such proceeding was to make perfect a right inchoate from the moment the lien attached. When a maritime lien existed, a proceeding in rem was the proper course to carry it into effect. An act of congress, approved September 29, 1789, entitled "An act to regulate process in the courts of the United States" (1 Stat. 93), directed that the forms and modes of proceeding in causes of admiralty and maritime jurisdiction should be according to the course of the civil law. By the act of May 8, 1792 (1 Stat. 275), it is provided, "That the forms of writs, executions and other process, except their style and the forms and modes of proceeding in suits in those of common law, shall be the same as are now used in the said courts respectively, in pursuance of the act entitled 'An act to regulate processes in the courts of the United States,' in those of equity, and in those of admiralty and maritime jurisdiction, according to the principles, rules and usages which belong to courts of equity, and to courts of admiralty, respectively, as contradistinguished from, courts of common law, except so far as may have been provided for by the act to establish the judicial courts of the United States, subject, however, to such alterations and additions as the said courts respectively shall, in their discretion, deem expedient, or to such regulations as the supreme court of the United States shall think proper, from time to time, by rule, to prescribe to any circuit or district court concerning the same."

The power here conferred on the supreme court was enlarged by an act of congress, approved August 23, 1842. 5 Stat. 517, § 6. Pursuant to the authority of these two acts of congress, the supreme court of the United States at the January term, 1842, adopted rules of practice for the courts of admiralty. One of these rules is this rule 12. "In all suits by material men for supplies or repairs, or other necessaries, for a foreign vessel or ship, or for a ship in a foreign port, the libellant may proceed against the ship and freight in rem, or against the master or the owner alone in personam. And the like proceeding in rem shall apply to cases of domestic ships where, by the local law, a lien is given to material men for supplies, repairs or other necessaries."

At the December term of the supreme court, 1858, the said twelfth rule of practice was repealed, and the following rule was substituted in its place: "In all suits by material men for supplies or repairs, or other necessaries, for a foreign ship or for a ship in a foreign port, the libellant may proceed against the ship and freight in rem, or against the master or owner alone in personam. And the like proceeding in personam, but not in rem, shall apply to cases of domestic ships for supplies, repairs, or other necessaries." If this rule had not been repealed nor modified, these libellants could not maintain this libel in rem. But at the December term of the supreme court of 1871, the said twelfth rule was amended so as to read: "In all suits by material men for supplies or repairs, or other necessaries, the libellants may proceed against the ship and freight in rem, or against the master or owner alone in personam." This libel is brought under this last rule.

The ninth section of the act to establish the judicial courts of the United States (1 Stat. 73), confers upon the district courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction." The English rules, that were supposed to exist at the date of the adoption of the constitution of the United States, and when the above mentioned act was passed by congress, that the admiralty jurisdiction did not extend beyond tide waters, and that proceedings in rem could only be sustained for the adjudication of a maritime lien, have been exploded. The admiralty and maritime jurisdiction granted to the federal government by the constitution of the United States, is not limited to tide waters, but ex-

SELT (Case No. 12,649)

[21 Fed. Cas. page 1050]

tends to all public navigable lakes and rivers where commerce is carried on between different states and with foreign nations. The Genesee Chief, 12 How. [53 U. S.] 443, and many subsequent decisions. Liens by bottomry bonds, for seamen's wages, salvage service, and for supplies or repairs in a foreign port, are supposed to be founded on contracts upon the credit of the vessel, and are distinguished from contracts at the home port of the vessel, which are contracts on shore on the credit of the owner. Contracts at the home port for repairs, supplies or the use, or insurance of a vessel, are now considered as maritime contracts cognizable in the admiralty. In the case of The Moses Taylor, 4 Wall. [71 U. S.] 411, it is announced that the distinguishing and characteristic feature in a suit in admiralty is that the vessel proceeded against is itself seized and impleaded as a defendant, and is judged and condemned accordingly. And in The Hine v. Trevor. Id. 555, and in New England Mutual Marine Ins. Co. v. Dunham, 11 Wall. [78 U. S.] 1, it is stated that the true criterion, whether contracts are within the admiralty and maritime jurisdiction, is their nature and subject-matter, as whether they are maritime contracts having reference to maritime service, maritime transactions, or maritime casualties, without regard to the place where they are made. In view of these principles it was held in this case that the contract of marine insurance is a maritime contract within the admiralty and maritime jurisdiction, in personàm.

I think it is now settled that these libellants can maintain their libel in rem, for the recovery of their claim for repairs and supplies. The question is not presented in this case whether the lien attached at the date of the work done and the supplies furnished, or by the attachment under the monition. My impression at present is that the rule merely extends a remedy to a domestic creditor, and that his lien attaches by the seizure.

It is clear that a mortgagee of a vessel has no maritime lien, nor remedy in rem, in the admiralty courts. The mere mortgage of a vessel, other than that of an hypothecated bottomry, is a contract without any of the characteristics or attendants of a maritime loan, and is entered into by the parties to it without reference to navigation or perils of the sea. The John Jay, 17 How. [58 U. S.] 399. The record of the mortgage set up in the answer makes it a legal lien, but not a maritime lien. The mortgagee, as such, cannot proceed in this court in rem for the condemnation and sale of the vessel. After a sale of a vessel under an admiralty decree, the mortgagee can petition the court for payment out of remnants and surplus. A legal title passes conditionally by the mortgagor to the mortgagee, and it is more equitable to pay out of the registry the surplus of proceeds of sale of a vessel to a mortgagee, than to the owner of the equity of redemption. The mortgagee was allowed as the conditional owner of the vessel, and in the absence of the mortgagor, to appear and set

up his mortgage, and claim that it is a legal lien on this vessel, prior in date to the attachment under the libellants' monition, and also prior to their contract propounded in their libel.

The state law provides for a lien for supplies and repairs upon boats and vessels used in navigating the waters of the state, and authorizes proceedings in rem against said boats and vessels. Whether this law has any validity as authority for such proceedings in the state courts, I need not decide. Since the cases of The Belfast, 7 Wall. [74 U. S.] 624, The Moses Taylor [supra], and The Hine v. Trevor [supra], it is nugatory as authority for such proceeding in this court. The states can neither enlarge nor limit the admiralty and maritime jurisdiction of the federal courts. The constitution and laws of the United States necessarily conferred exclusive admiralty and maritime jurisdiction upon the federal courts for the protection of commerce and for the preservation of amicable commercial relations with foreign nations. This vessel is libelled as a national enrolled and licensed vessel used in navigating the lakes, and is not within the scope of the state law.

The libellants might have proceeded in the state court against the owner of the vessel, or in this court, in personàm, and before the modification of the rule, they would have had to make choice of these remedies.

A sale of the vessel under an execution against the owner, issued from either of the courts, might not disturb the mortgagee's interest. The modification or alteration of rule 12 was no doubt intended to place contracts for repairs and supplies for all ships and vessels on an equality as to proceeding in the admiralty, whether foreign or domestic. All distinction in regard to proceeding in rem is abolished; but I do not suppose it was intended by the supreme court to abrogate the distinction between a domestic contract for supplies and repairs and a maritime lien upon a foreign vessel. The alteration of the rule, in my opinion, applies to the character of the process to be used, and has no relation to the question of jurisdiction. The rules established or altered by the supreme court. under legislative authority, are not rules of decision, but are merely rules of practice, prospective in their operation. The St. Lawrence, 1 Black [66 U. S.] 522. In that case it is decided that the change of the rule in the year 1844, prohibiting a proceeding in rem on domestic contracts, could not interrupt the prosecution of a libel pending on such a contract. But in this case the mortgagee rested upon his mortgage and its record, without having either instituted proceedings for the recovery of the amount secured, or having taken possession of the vessel under his mortgage. The mortgagee had knowledge of the repairs being made on the vessel by the libellants, who thereby made her a more valuable security. And it appears that the libellants. with knowledge of the mortgage, expended a large amount in sup-

plies and repairs, under the belief that they had a right to attach the vessel.

By the ruling in the case of The Island City [Case No. 7,109], the mortgage would be postponed to the claim of the libellants, upon the ground of a lien created by the state law. But in this case there is no such lien. It appears that the vessel was a wreck, affecting the security of the mortgage, and that the repairs have restored her to usefulness. I think, upon principles of equity, these parties should be placed on an equality as to the distribution of the proceeds of sale. The proceeds of the sale of a vessel are not appropriated to liens, according to their priority in date. The seamen who brought a vessel into port are paid before a bottomry bond, and a bottomry bond before a lien on a contract of affreightment. Maritime liens are usually preferred on the score of merit and necessity, for the advancement and protection of commerce.

Salvors are first paid out of the property saved.

Decree for libellants.

NOTE. For a full citation of authorities on the question of lien on domestic vessel, examine The Celestine [Case No. 2,541]; The Lady Franklin [Id. 7,982]; The Eclipse [Id. 4,268]. For a full discussion of admiralty rule 12, with special reference to the amendment of May 6, 1872, consult 7 Am. Law Rev. 1; also opinion of Deady, J., in The Augusta [Case No. 647], and opinion of Blatchford, J., in The Circassian [Id. 2,720a].